# Richmond

## J. C. LAW v. COMMONWEALTH OF VIRGINIA, ETC.

November 21, 1938.

Record No. 1987.

Present, All the Justices.

The opinion states the case.

*L. S. Parsons*, for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *S. W. Shelton, Assistant Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On June 22, 1937, J. C. Law was convicted of reckless driving by the trial justice of Norfolk county. On December 20, 1937, all within a year, he was convicted of a like offense by the trial justice of Nansemond county. The record of these convictions was forwarded to the Division of Motor Vehicles at Richmond. That of the last was received on January 4, 1938, and on January 7, 1938, the Director of the Division of Motor Vehicles ordered that Law's license be revoked for a period of one year. A copy of this order was sent to him. This was in exact accordance with section 2154, subsection 186, of the Code of Virginia. Thereafter he applied to the Director of the Division of Motor Vehicles to have the order of revocation set aside. This the Director refused to do, being of opinion that the statute was mandatory and that he had no discretion in the premises. Thereupon Law, seeking the same relief, filed his petition in the Corporation Court of the city of Norfolk. That court also refused to go into the merits of his convictions, being of opinion that the statute was mandatory.

Petitioner's first assignment of error reads:

"FIRST: The Director of Motor Vehicles not only acted arbitrarily and revoked petitioner's license to operate a motor vehicle without a hearing, but after due application for a hearing on the part of your petitioner, refused to grant him a hearing, in contravention of the provision of section 2154 (187), which provides as follows:

" 'The division may after due hearing, upon not less than five days' notice in writing * * * suspend or revoke the operator's license * * * whenever it is satisfactorily proved to the division:

" 'First. That such person has committed any offenses for the conviction of which mandatory revocation of license is provided in section 2154 (186).' "

This statute first appears in Acts of Assembly, 1932, ch. 385, pp. 775-781. It reappears in the Acts of 1934, ch. 389, pp. 820-822, and was further amended, see Acts 1936, ch. 22, p. 36, and it is in this form that it now appears in our Code. Until 1936, three convictions were necessary before revocation became mandatory. Since 1936, two only are needed.

The statute relied upon by the petitioner and which gives him the right to be heard in certain circumstances contains these provisions:

"Division may suspend or revoke licenses.— (a) The division may after due hearing, upon not less than five days' notice in writing, said notice to be sent by registered letter to the address given by the operator or chauffeur when applying for his license, which shall constitute sufficient form of notice, suspend or revoke the operator's or chauffeur's license issued to any person under the provisions of this act whenever it is satisfactorily proved to the division:

"First. That such person has committed any offenses for the conviction of which mandatory revocation of license is provided in section 2154 (186)."

 There is no conflict between these statutes. In the first, convictions are necessary before the mandatory directions to the Director of the Division of Motor Vehicles come into effect; in the second, although there has been no conviction, this Director is given power to revoke a license when he is satisfied by proper evidence that the licensee had been guilty of those offenses specified in subsection 186. It is only in such a case that he must hear evidence. He is given no power to disregard judgments of courts of competent jurisdiction.

And as a corollary to the claims already made, we are told that the Director of the Division of Motor Vehicles has arbitrarily denied to the petitioner that hearing to which he was entitled. In support of this contention *Morgan* v. *United States*, 304 U. S. 1, 58 S. Ct. 773, 999, 82 L. Ed. 1129, U. S. Supreme Court, of date April 25, 1938, is cited

and strongly relied upon. There the Secretary of Agriculture was given power to fix maximum rates to be charged by stockyards. The court said [page 775]:

"And in equipping the Secretary of Agriculture with extraordinary powers under the Packers and Stockyards Act, the Congress explicitly recognized and emphasized this requirement by making his action depend upon a *'full hearing.'* "

The duties imposed upon the Secretary of Agriculture were quasi judicial and to be exercised only after a "full hearing." Here no provision has been made for a hearing at all after there have been two convictions.

The Director could not be expected to hear evidence when there was nothing for him to decide.

It is equally manifest that the Corporation Court of the city of Norfolk could not in this proceeding pass upon the judgments of the trial justices. From those judgments, Law had the right of appeal. This right he did not see fit to exercise, and so they have become final. Upon the merits of his case a defendant is entitled to one fair trial and to no more. *Vaughan* v. *Mayo Milling Co.*, 127 Va. 148, 102 S. E. 597.

The second assignment of error reads:

"SECOND: The license issued by the State and delivered to your petitioner carried a provision thereupon that the petitioner's license would not be revoked until at least three convictions for reckless driving had been rendered against him. This constituted a contract with the State of Virginia and should not have been disregarded, but the licensee should have been notified so that he would not have been lured into a position of what he thought was safety and for the sake of convenience, as occurred in one of the instances in his case, allowed a fine to be entered without defending the charge, this being the cheapest course for him to pursue."

We pass without comment the suggestion that he was lured into believing that he could with impunity twice violate the statute which forbids reckless driving.

■■■ There is no copy of the license in the record and no evidence of how any endorsement thereon came to be written. The presumption is that it was placed there by the Division of Motor Vehicles. Law says, "It was on my driver's license that it would be revoked on the third offense." It appears to have been issued in 1934. In Code, section 2154 (179), it is provided that after the thirtieth day of June, 1934, licenses should run for a period of five years. But we think it plain that this was not an irrevocable privilege. It appears to be conceded that it could have been revoked upon a hearing by the Director of Motor Vehicles. It would be unlooked for and curious if a licensee could say to the State, "I have a contract with you which gives me a privilege which I may exercise, regardless of its abuses, for the contract period." A license is a privilege and not a contract, and it may, upon abuse, be withdrawn. *American Tobacco Co.* v. *Danville,* 125 Va. 12, 99 S. E. 733. A very instructive case on this point is *Nulter* v. *State Road Commission of West Virginia* (W. Va.), 193 S. E. 549, a decision handed down by the Supreme Court of West Virginia on October 26, 1937. It is there said [page 552]:

"The operation of a motor vehicle on the public highways is not a natural right, nor is a license to do so a contract, or property right, in a constitutional sense. It is merely a conditional privilege which may be suspended or revoked under the police power, even without a notice or an opportunity to be heard. 'Revocation of license (automobile) by state board of public roads without hearing does not operate so as to deprive of property without due process,'" citing a host of authorities.

■■■ A license to use its highways does not abridge the police power of the Commonwealth to make them safe. That this power should be exercised to its limit is made manifest by the appalling number of motor accidents, due, in major measure, to reckless driving.

Finally, there are these assignments:

"THIRD: The other grounds for this petition, including the objections and exceptions which the petitioner relies

upon, are apparent on the face of the certificate of exceptions filed in the record herewith, all of which are relied upon and made a part of this petition.

"FOURTH: The argument before the trial court upon which the petition for relief was based is copied into the record and is asked to be read as a part of this petition."

■ There is here no concise and fair statement of pertinent facts, nor are any legal questions succinctly stated. Rule II, Rules of Court. We do not search the record for errors not thus indicated. *Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384; *City of Charlottesville* v. *Jones*, 123 Va. 682, 97 S. E. 316; *Wash* v. *Holland*, 166 Va. 45, 183 S. E. 236; *Ballard* v. *Commonwealth*, 156 Va. 980, 159 S. E. 222; Code, section 6346. Petitioner must put his finger upon alleged errors. To require an appellate court to seek out the substance of all contentions made during the progress of a trial would be to impose upon it an improper burden.

The judgment appealed from is plainly right and should be affirmed.

*Affirmed.*